UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAKA SHABAZZ, : | |
|     Plaintiff, : | |
| : | |
| v. : | Case No. 3:16cv62(MPS) |
| : | |
| JAMES DZURENDA, ET AL., : | |
|     Defendants. : | |

### RULING AND ORDER

The plaintiff, Shaka Shabazz, is incarcerated at the Cheshire Correctional Institution in Cheshire, Connecticut. He has filed a motion to amend the complaint. The motion is granted. The amended complaint names Commissioner James Dzurenda, District Administrator Angel Quiros, Deputy Warden William Faneuff, Warden Carol Chapdelaine, Captain Corl, and Correctional Officer Allen as defendants. For the reasons set forth below, the amended complaint is dismissed in part.

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has

1

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

The plaintiff claims that in January 2014, he was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall-Walker"). On January 31, 2014, Captain Corl and Correctional Officer Allen issued the plaintiff a disciplinary report for Security Tampering and Conspiracy. The charge was based on an envelope addressed to the plaintiff and received in the MacDougall-Walker mail room by Officer Allen. Although the envelope included a handwritten return mailing address indicating that it had been sent by a legitimate attorney, Officer Allen viewed the envelope as being suspicious based on the way the envelope was labeled as legal mail and the fact that the postage stamps on the envelope had not been validated or cancelled by the post office. Due to the suspicious nature of the envelope, Officer Allen reviewed the plaintiff's recent telephone calls and concluded that a woman who received of a telephone call made by the plaintiff on January 30, 2014, had fraudulently labeled the envelope as legal mail and had sent the envelope to the plaintiff. Officer Allen, Captain Corl, and Deputy Warden Faneuff reviewed the contents of the envelope and noted that it contained instructions and forms from Sovereign

Filing Solutions/Secured Party Creditor. According to Captain Corl and a member of the Department of Correction Security Division, an inmate is not permitted to possess these types of documents unless he or she can show good cause for possessing them and he or she has a business that conducts interstate commerce. After reviewing the contents of the letter, Officer Allen confiscated the letter and its contents and allegedly made photocopies of the contents.

After a hearing on the charge, a disciplinary hearing officer found the plaintiff not guilty of the security tampering charge and did not impose any sanctions. Neither Officer Allen nor the hearing officer returned the envelope that had been confiscated or its contents to the plaintiff. The plaintiff claims that he submitted multiple requests and grievances to Warden Chapdelaine seeking to have the contents of the envelope returned to him. Warden Chapdelaine denied the plaintiff's grievance regarding the alleged improper conduct of Correctional Officer Allen in handling his legal mail. District Administrator Quiros denied the plaintiff's appeal of the decision of the Warden.

The plaintiff sues the defendants in their individual capacities only. He seeks punitive and compensatory damages.

**I.      Property Claim**

The plaintiff claims that he attempted to obtain the documents that had been in the envelope mailed to him by an attorney and received by the mail room at MacDougall-Walker on January 31, 2014, but the defendants refused to return the documents to him. Although the plaintiff does not clearly articulate all of his legal claims, the Court interprets one of them to allege a violation of the Due Process Clause of the Fourteenth Amendment. The Supreme Court has found that the Due Process Clause of the Fourteenth Amendment is not violated when a

prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1983); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981).

The State of Connecticut provides an adequate remedy for the kind of deprivation the plaintiff alleges. *See* State of Connecticut Department of Correction Administrative Directive 9.6(16) (2013), available at www.ct.gov/dos/LIB/doc/PDF/AD/ad01006.pdf, (providing Department of Correction's Lost Property Board shall hear and determine any claim by an inmate who seeks compensation not to exceed $3,500.00 for lost or damaged personal property and that the inmate may present the property claim to the Claims Commissioner after the Board denies the claim in whole or in part); Conn. Gen. Stat. § 4-141 et seq. (providing that claims for payment or refund of money by the state may be presented to the Connecticut Claims Commission); *S. v. Webb*, 602 F. Supp. 2d 374, 386 (D. Conn. 2009) (finding Connecticut has sufficient post-deprivation remedies for seizures of property by state officials). This state remedy is not rendered inadequate simply because plaintiff anticipates a more favorable remedy in federal court or because it may take longer before his case is resolved in the state system. *See Hudson*, 468 U.S. at 535.

The plaintiff does not allege that he has attempted to obtain just compensation from the State of Connecticut or that he declined to do so because the State of Connecticut's remedy for the deprivation of his property was inadequate or unavailable. Thus, the plaintiff's federal claim that the defendants refused to return the documents enclosed in the letter addressed to him and received by the mail room at MacDougall-Walker on January 31, 2014, fails as a matter of law. The property claim against the defendants is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**II.     Access to Courts**

As indicated above, the documents in the envelope that were confiscated on January 31, 2014, were from Sovereign Filing Solutions. The plaintiff claims that he intended to consult with the attorney who mailed him the documents.

It is well settled that inmates have a First Amendment right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977) (*modified on other grounds by Lewis v. Casey*, 518 U.S. 343, 350 (1996)). To state a claim for denial of access to the courts, the plaintiff is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *See Lewis*, 518 U.S. at 353. To establish an actual injury, plaintiff must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997), *cert. denied*, 525 U.S. 823 (1998).

The plaintiff claims that the documents from Sovereign Filing Solutions were related to a civil action and that being involved in a civil action would not jeopardize the safety of the facility. The plaintiff contends that at some point after the documents from Sovereign Filing Solutions were confiscated by defendant Allen, he attempted to contact the attorney who had mailed him the documents to ask that he re-mail another set of the documents to him, but the attorney "was so shocked by the defendants conduct that he withdrew from the communication/consultation all together." (ECF No. 10-1 at 11.) The plaintiff has not been able to find another attorney to assist him. There are no facts to suggest that any civil action that the plaintiff might pursue in reliance on the documents from Sovereign Filing Solutions would

constitute the type of action that meets the injury requirement in *Lewis*. "The injury requirement is not satisfied by just any type of frustrated legal claim [and] . . . does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing" any type of lawsuit. Rather, the injury must be related to the ability or capacity of prisoners to "attack their sentences, directly or collaterally, and . . . to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355. Because the plaintiff does not allege that the information from the documents that he did not receive would be used to challenge his conditions of confinement or his criminal sentence on appeal or in a state habeas petition, he has not met the injury requirement in *Lewis*.

Furthermore, he has not alleged that any civil action that he might file based on information in the documents would be non-frivolous. It appears that the plaintiff may have been attempting to secure information regarding the filing of a lawsuit based on a sovereign citizen claim. Adherents of such claims or defenses "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011) (citations omitted). Federal courts across the country, however, have routinely refused to credit arguments based on a sovereign citizen or other similar theory because the arguments are often frivolous, irrational, and unintelligible. *See United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a sovereign citizen, a secured-party creditor, or a flesh-and-blood human being, that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.") (internal quotation marks omitted), cert. denied, ___ U.S. ___, 132 S. Ct. 1612

(2012); *Paul v. New York*, No. 13-CV-5047 (SJF)(AKT), 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013) (dismissing complaint as factually and legally frivolous because "[t]he conspiracy and legal revisionist theories of sovereign citizens are not established law in this court or anywhere in this country's valid legal system.") (internal quotation marks and citation omitted); *United States v. Staten*, Criminal No. 1:10-cr-179, 2012 WL 2389871, at *3 (M.D. Pa. June 25, 2012) (citing cases). For all of the reasons set forth above, the plaintiff's access to courts claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### III.     Grievance Procedures

The plaintiff states that Administrator Quiros denied his level two appeal of the decision of Warden Chapdelaine regarding Officer Allen's improper confiscation of his legal mail. After denying the appeal, Administrator Quiros indicated in writing that the plaintiff had exhausted his administrative remedies and that any level three appeal would not be answered. The plaintiff filed a level three appeal directed to Commissioner Dzurenda anyway. Commissioner Dzurenda allegedly did not respond to the level three appeal.

The plaintiff claims that Administrator Quiros and Commissioner Dzurenda violated his federal and state constitutional rights to petition the government for redress of grievances because they either denied him further appeals of his grievance about the handling of his legal mail or failed to respond to the appeal of the grievance. There are no facts to suggest that the defendants prevented the plaintiff from filing grievances. Warden Chapdelaine responded to the plaintiff's level 1 grievance and Administrator Quiros responded to the appeal of the level 1 grievance. Administrator Quiros indicated that the plaintiff had exhausted his available remedies under the State of Connecticut's administrative remedy program. The plaintiff then filed this

action asserting his claims regarding the alleged unlawful confiscation of legal mail. Thus, the plaintiff has not alleged facts suggesting that the defendants violated his right to petition the government for redress of grievances under either the First Amendment of the United States Constitution or Article 1, section 14 of the Connecticut Constitution.

Furthermore, it is well-established that "[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." *Shell v. Brzesniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y.2005). In addition, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y.2010) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y.2003) ("The corrections officers' failure to properly address [plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest.")). Thus, Administrator Quiros's decision that the plaintiff had exhausted his administrative remedies with regard to his claim of improper confiscation of legal mail and any decision by Commissioner Dzurenda not to process or investigate the plaintiff's level three appeal do not rise to the level of a constitutional violation.

The claim that the defendants Dzurenda and Quiros deprived the plaintiff of his federal and state constitutional rights to the redress of grievances and the claim that defendants Dzurenda and Quiros failed to process grievance appeals are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**IV.    Interference with Legal Mail**

The First Amendment protects an inmate's right of access to the courts and access to the free flow of incoming and outgoing correspondence. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997), *cert. denied*, 525 U.S. 823 (1998) and *Heimerle v. Attorney General*, 753 F.2d 10, 12-13 (2d Cir. 1985)). To state a First Amendment claim, a prisoner must allege that the "prison officials regularly and unjustifiably interfered with the incoming legal mail." *Davis*, 320 F.3d at 351. Thus, isolated incidents of interference with legal mail are insufficient to state a constitutional violation. *See id.* ("as few as two incidents of mail" opening by prison officials could state an actionable claim "(1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received.") (citation omitted).

Here, the plaintiff claims that Officer Allen, Lieutenant Corl, and Deputy Warden Faneuff confiscated a letter addressed to him from an attorney and opened and read the contents of the letter outside of his presence on one occasion. Warden Chapdelaine and Administrator Quiros failed to remedy this improper interference with the plaintiff's legal mail after learning about it through grievances. This one incident involving mail interference does not constitute a continuing practice of unjustified interference with mail. *See Davis*, 320 F.3d at 351-52 (inmate failed to "state a constitutional claim for violating his right to send and receive legal mail because he allege[d] neither the establishment of an ongoing practice by prison officials of interfering with his mail nor any harm suffered by him from the tampering").

9

Thus, the court concludes that the plaintiff has failed to state a claim under the First Amendment against the defendants. All First Amendment claims with regard to mail interference are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## V.     Conspiracy Claim

The plaintiff generally asserts that the conduct of the defendants constituted a "chain conspiracy within the scope of 42 U.S.C. § 1983." (Amended Compl., ECF No. 10-1 at 12.) To state a claim for conspiracy under section 1983, plaintiff must allege facts showing an agreement between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and an overt act done in furtherance of the conspiracy that causes damages. *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted)).

Plaintiff has asserted no facts from which the court could infer the existence of a conspiracy by the defendants to violate the plaintiff's constitutional rights. The claim that the defendants conspired to violate his constitutional rights is conclusory, at best. Accordingly, the plaintiff has not asserted a plausible conspiracy claim against the defendants and the claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**VI.     State Law Claims**

The plaintiff claims that the defendants violated his rights under the Connecticut Constitution. In addition, the plaintiff claims that he is entitled to relief based on a violation of the common law tort of unlawful confiscation of property.

    **A.     Connecticut Constitutional Claims**

The plaintiff claims that the defendants violated his rights under Article I, sections 10 and 20 of the Connecticut Constitution.[1] In *Binette v. Sabo*, 244 Conn. 23, 25-26, 710 A.2d 688, 689 (1998), the Connecticut Supreme Court recognized a private cause of action for monetary damages stemming from alleged violations of article first sections 7 and 9 of the Connecticut Constitution. The Court is unaware of any cases in which a Connecticut court has recognized a private right of action under either Article I, sections 10 or 20 of the Connecticut Constitution. *See Sentementes v. General Elec. Co.*, Civil Action No. 3:14-CV-131(VLB), 2014 WL 2881441, at *10 (D. Conn. June 25, 2014) (dismissing claim that defendants violated "Article I, section 10 of the Connecticut state constitution . . . [because] Connecticut courts do not recognize a private action under that clause"); *Warde v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001) ("The court finds there is no private cause of action for monetary damages under the equal protection and due process provisions (Art. First, §§ 1, 8, 20) of the Connecticut

---

[1] Article I, section 10 provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Conn. Const. art. I, § 10.

Article I, section 20, ensures equal protection of the laws and protection against discrimination on the basis of race, religion, color, ancestry or national origin. Conn. Const. art. I, § 20.

11

Constitution."); *Binette*, 244 Conn. at 31-32, 710 A.2d at 692. Accordingly, the claims under Article I, sections 10 and 20 are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The plaintiff also claims that the defendants violated Article I, section 11 of the Connecticut Constitution when they confiscated the contents of the envelope received by the mailroom on January 31, 2014. The Fifth Amendment to the United States Constitution provides in relevant part, that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Article I, section 11 of the Connecticut Constitution essentially mirrors the Just Compensation Clause of the Fifth Amendment. It provides that "[t]he property of no person shall be taken for public use, without just compensation therefor." Conn. Const. art. I, § 11.

The threshold question in any takings case is whether the plaintiff has a protected property interest. *See Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992). Property interests arise from state law. *Id.* The plaintiff has not identified any Connecticut law that affords him, as a Connecticut prison inmate, a property interest in the forms and instructions mailed to him by Sovereign Filing Solutions.

The attachments to the amended complaint reflect that a member of the Department of Correction Security Division reviewed the forms and instructions from Sovereign Filing Solutions that were contained in the envelope addressed to the plaintiff and determined that the documents could not be possessed by an inmate unless he or she could demonstrate good cause and that he or she had a business that conducted inter-state commerce. (*See* Amended Compl., Ex. F, ECF No. 10-2 at 9.) The plaintiff does not allege that he met the criteria for possession of the documents. Thus, he was not authorized to possess these documents. As such, the plaintiff

does not have a recognized property interest in the documents from Sovereign Filing Solutions and he is not entitled to just compensation. The plaintiff's claim under Article I, section 11 of the Connecticut Constitution is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B.   Tort Law Claims

The plaintiff also asserts that the defendants violated the common law tort of discrimination and the tort of unlawful confiscation of property. Research has revealed no common law tort of discrimination in Connecticut.

The tort of conversion is defined as the "unauthorized assumption and exercise of the right ownership that interferes and harms the owner's rights to that property." *Yeomans v. Wallace*, 291 F. Supp. 2d 70, 76-77 (D. Conn. 2003) (citing *Suarez-Negrete v. Trotta*, 47 Conn. App. 517, 521, 705 A.2d 215 (1998)). As indicated above, a member of the Department of Correction's Security Division reviewed the forms and instructions from Sovereign Filing Solutions and determined that the plaintiff was not permitted to possess the documents unless he could demonstrate good cause and that he had a business that conductes inter-state commerce. (*See* Amended Compl., Ex. F, ECF No. 10-2 at 9.) The plaintiff does not allege that he met the requirements for possessing the documents. Thus, he has not alleged that the confiscation of the documents was unauthorized. The plaintiff's tort claim of conversion and tort of discrimination are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## VII.   Equal Protection Claim

The plaintiff alleges that Officer Allen made statements indicating that she confiscated and opened his legal mail on January 31, 2014, because he was a Muslim and she does not like Muslims. The plaintiff claims that after the disciplinary charge for safety and security was

13

dismissed, he first asked Officer Allen to return the contents of the envelope but she refused to do so because she did not like Black Muslims. The plaintiff then informed Deputy Warden Faneuff that Officer Allen had refused to return his legal mail to him. Deputy Warden Faneuff allegedly stated that he would not facilitate the return of the plaintiff's legal mail because he does not like Black Muslims. The Court concludes that the plaintiff has stated a plausible Fourteenth Amendment Equal Protection claim against defendants Allen and Faneuff. This claim will proceed against defendants Allen and Faneuff in their individual capacities.

## ORDERS

The Court enters the following orders:

(1)     The Motion for Leave to Amend [**ECF No. 10**] is **GRANTED**. The Clerk shall docket the amended complaint and exhibits that are attached to the motion to amend. All claims in the Amended Complaint against defendants Dzurenda, Quiros, Chapdelaine, and Corl are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and all claims against defendants Allen and Faneuff except the Fourteenth Amendment equal protection claim are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Fourteenth Amendment equal protection claim shall proceed against defendants Allen and Faneuff in their individual capacities.

The Motion for Court Aid [**ECF No. 3**] which seeks assistance from the Court with service of the complaint is **DENIED** as moot. The Clerk will take the necessary steps to effect service of the Amended Complaint on defendants Faneuff and Allen.

(2)     **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Correctional Officer Allen and Deputy Warden William Faneuff and mail a waiver of service of process

request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of all the requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Defendants shall file their response to the Amended Complaint, either an answer or motion to dismiss, **within sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

SO ORDERED at Hartford, Connecticut this 9th day of August, 2016.

_____/s/_____
Michael P. Shea
United States District Judge